UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES MOORE,

      Plaintiff,                            Case No. 4:18-cv-13845
                                              District Judge Matthew F. Leitman
v.                                     Magistrate Judge Kimberly G. Altman

DAWN MALY, LORI KOPKA,
CHERYL BUTTS, GREGORY BOYD,
VALERIE LOVE, and JANE/JOHN DOE,
REGIONAL HEALTH
ADMINISTRATORS,

      Defendants.

_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 66)

### I.    Introduction

This is a prisoner civil rights case under 42 U.S.C. § 1983. Plaintiff Charles Moore, proceeding *pro se*, sued several defendants claiming violations of his constitutional rights while he was a prisoner housed at the Gus Harrison Correctional Facility ("ARF"). All pretrial matters have been referred to the undersigned. (ECF No. 43). Before the Court is Lori Kopka, Cheryl Butts, Gregory Boyd, and Valerie Love's Motion for Summary Judgment under Fed. R. Civ. P. 56(a), contending that Moore's claims are unexhausted and lack merit.

1

(ECF No. 66).  For the reasons set forth below, the undersigned RECOMMENDS that the motion be GRANTED.

## II.    Background

On December 11, 2018, Moore, filed a complaint against Corizon Health, Inc. and Dawn Maly,[1] a licensed practical nurse employed by the Michigan Department of Corrections ("MDOC"). (ECF No. 1).  On February 12, 2019, he filed an amended complaint, naming Maly and, Janet Campbell, an MDOC health unit manager, as defendants. (ECF No. 16).  By stipulation of the parties, on March 3, 2019, Corizon was dismissed.  (ECF No. 18).

On December 11, 2020, Moore filed a second amended complaint against Kopka, Campbell,[2] Butts, Boyd, and Love, all employed by the MDOC, making the following allegations.[3] (ECF No. 48).

---

[1]Initial attempts to serve Maly were unsuccessful as it appears she is no longer employed by the MDOC.  The undersigned recently entered an order directing the Marshals to serve Maly at an address to be provided by the MDOC.  *See* ECF No. 74.

[2]Just prior to the filing on the Second Amended Complaint, on December 8, 2020, Campbell's motion for summary judgment was granted and all claims against her were dismissed with prejudice.  *See* ECF Nos. 30, 44.

[3]Moore's second amended complaint also names "Jane/John Doe, Regional Health Administrators" as defendants and alleges that they failed to address and correct the systemic non-compliance . . . with respect to the safety procedures and protocols in place for the safe dispensing of restricted medications." (ECF No. 48, PageID.325), ¶ 40.  However, Moore has made no effort to identify these individuals other than to state that they are "Regional Health Administrators." The

Moore was an inmate in the custody of the MDOC at ARF. (ECF No. 48, PageID.319).  He was receiving treatment for various medical conditions, including Type II diabetes, hypertension, post-traumatic stress disorder, and depression, and was prescribed medication. (*Id.*, PageID.320).  On February 5, 2019, Butts, a nurse, issued him medication prescribed by a different inmate with the same last name, Larry Moore.  (*Id.*, PageID.323).  In April of 2019, Boyd, a nurse, issued Moore another prisoner's medication.  (*Id.*).  On June 11, 2019, another nurse, Love, issued Moore another prisoner's medication. (*Id*).  Moore did not ingest these medications. (*Id.*).

Moore further alleges that Kopka, a nursing supervisor, "failed to address and correct the systemic non-compliance at ARF Health Care Services with respect to the safety procedures and protocols in place for the safe dispensing of restricted medications."  (*Id.*, PageID.324).

Moore asserts the following claims: deliberate indifference to his medical needs, in violation of the Eighth Amendment; and violation of the right to bodily integrity, in violation of Fourteenth Amendment due process.  (*Id.*, PageID.326-327).

---

undersigned will issue a separate order requiring Moore to show cause why the unnamed defendants should not be dismissed.

At his deposition, Moore testified that although he knew that Butts had given him a medication that was intended for another prisoner, he did not know what that medication was, and he did not ingest the medication. (ECF No. 66-6, PageID.539-540). He testified that Butts gave him the wrong medication on only one occasion. (*Id*., PageID.541). Moore did not know what medication Boyd gave him, but he knew it was incorrect, and did not ingest it. (*Id*., PageID.541-542). He was not injured from the incident involving either Boyd or Butts. (*Id*., PageID.542). Likewise as to Love, Moore knew that he had received the wrong medication but did not know what it was. (*Id*., PageID.543). He did not ingest it and he was not physically injured. (*Id*., PageID.543-544). Moore testified that he was suing Kopka because she was a supervisory official who failed to take corrective action. (*Id*., PageID.544).

In support of their motion, defendants have submitted Kopka's Declaration. (ECF No. 66-4, PageID.528-530). Kopka states that until December 14, 2018, she was the Director of Nursing for several MDOC facilities, including ARF. She retired on December 14, 2018. (*Id*., PageID.528). She states that if a nurse was found to have given the incorrect medication to a prisoner, that nurse "would be verbally counselled and instructed on adherence to medication administration policy." (*Id*., PageID.529). Kopka further states that she is "not aware of any incident involving Nurse Butts on February 5, 2019, Nurse Boyd in April of 2019,

or Nurse Love on June 11, 2019, as all of these dates are after I retired from the

MDOC." (*Id*).

### III.   Legal Standards

### A.   Rule 12(b)(6)

When deciding a motion to dismiss under Federal Rule of Civil Procedure

12(b)(6), the Court must "construe the complaint in the light most favorable to

plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605,

608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to state a claim to relief that is plausible

on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation

omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(concluding that a plausible claim need not contain "detailed factual allegations,"

but it must contain more than "labels and conclusions" or "a formulaic recitation of

the elements of a cause of action ...").  Facial plausibility is established "when the

plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S.

at 678 (citation omitted).  "The plausibility of an inference depends on a host of

considerations, including common sense and the strength of competing

explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v.

Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

5

B.     Rule 56

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion").  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.' "  *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The fact that Moore is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz* [*v. Sorema, N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.' " *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).

## IV.    Discussion

Defendants raise several arguments in support of their motion. Each will be addressed in turn below.

### A.    Exhaustion

Defendants first argue that Moore's claims against all of them are unexhausted. The Prison Litigation Reform Act ("PLRA") requires prisoners to "properly" exhaust all "available" administrative remedies prior to filing a lawsuit challenging prison conditions. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 88-90, 93 (2006). Proper exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90 (emphasis in

original) (internal quotations and citations omitted). Requiring exhaustion allows

prison officials an opportunity to resolve disputes concerning the exercise of their

responsibilities before being haled into court and produces a useful administrative

record. *Jones v. Bock*, 549 U.S. 199, 204 (2007). The PLRA does not detail what

"proper exhaustion" entails because "it is the prison's requirements, and not the

PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

"Failure to exhaust administrative remedies is an affirmative defense, which

the defendant has the burden to plead and prove by a preponderance of the

evidence." *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015). But a

prisoner  countering a motion alleging failure to exhaust "must offer competent

and specific evidence showing that he indeed exhausted his remedies, or was

otherwise excused from doing so." *Sango v. Johnson*, No. 13-12808, 2014 WL

8186701, at *5 (E.D. Mich. Oct. 29, 2014) (Grand, M.J.), *report and

recommendation adopted*, 2015 WL 1245969 (E.D. Mich. Mar. 18, 2015).

Granting summary judgment because of a failure to exhaust administrative

remedies is not on the merits and thus requires dismissal without prejudice. *Adams

v. Smith*, 166 F. App'x 201, 204 (6th Cir. 2006).

The MDOC has established a three-step process to review and

resolve prisoner grievances. "Under the [Michigan] Department of Corrections'

procedural rules, inmates must include the '[d]ates, times, places and names of all

those involved in the issue being grieved' in their initial grievance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010). As noted by the Court in *Woodford*, one of the purposes of requiring proper exhaustion is to "provide[ ] prisons with a fair opportunity to correct their own errors." *Woodford*, 548 U.S. at 94. To be sufficient, a grievance need not "allege a specific legal theory or facts that correspond to all the required elements of a particular legal theory." *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003), *abrogated on other grounds* by *Jones v. Bock*.  Nonetheless, the grievance must give "fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *Id.*

Under MDOC Policy Directive 03.02.130[4], prisoners must provide the following information at Step I of the grievance process: "The issues should be stated briefly but concisely.  Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places, and names of all those involved in the issue being grieved are to be included."  MDOC Policy Directive 03.02.130(R) (underscoring omitted). Furthermore, MDOC Policy Directive 03.02.130 sets forth time limits regarding the first step. Specifically,

---

[4]Policy Directive 03.02.130 is attached as Exhibit B to defendant's motion. (ECF No.66-3, PageID.519-526).

9

within two business days after becoming aware of a grievable issue, the inmate must attempt to verbally resolve the dispute with those involved. If such an attempt is not possible, or if it is unsuccessful, the inmate must then file a Step I grievance form within five days. The prison staff is required to respond in writing within 15 days, unless an extension is granted by the grievant. If the inmate is not satisfied with the response, he must request a Step II appeal form and file it within ten days after receiving the Step I response.

*Anthony v. Salisbury*, No. 18-10064, 2019 WL 5802690, at *4 (E.D. Mich. July 8, 2019), *report and recommendation adopted*, 2019 WL 3852584 (E.D. Mich. Aug. 16, 2019)  If a prisoner wishes to file an appeal to Step III, he or she must send the completed Step III grievance "within ten business days after receiving the Step II response."  *See* P.D. 03.02.130(FF). (ECF No. 66-3, PageID.525).

### 1.     Kopka, Boyd, and Love

Moore filed 11 grievances while incarcerated at ARF .  These grievances are attached as Exhibit A to defendants' response.  (ECF No. 66-2, PageID.446-517). Nine of these grievances name individuals other than the current Defendants and involve complaints unrelated to the claims in this case.[5]  Only two grievances, ARF-18-08-2029-12F and ARF-19-02-0352-12F[6], relate to Moore's complaint that the wrong medications were dispensed.  (*Id*., PageID.479, 484).

---

[5]*See* grievances ARF-19-09-2113-17B; ARF-19-08-196928K; ARF-19-04-0983-25A; ARF 19-05-1341-17A; ARF-18-03-0688-02C; ARF 17-09-2113-15B; ARF-17-07-1729-15D; ARF-17-04-0828-12E; and ARF 17-02-0295-17A.
[6]Grievance number ARF-19-02-0352-12F is listed by defendants as ARF-19-02-0352-28E based a renumeration of this grievance at Step III.  (ECF No. 66, PageID.422)(ECF No. 66-2, PageID.477).  For ease of reference to the grievance at

At Step I, grievance No. ARF-18-08-2029-12F names Maly and Campbell. (*Id.*, PageID.485). As noted above, Campbell has been dismissed with prejudice (ECF No. 44), and Maly, who has not yet been served, is not part of this motion. Kopka, Boyd, Butts, and Love are not named in this grievance. Moore also failed to name Kopka, Boyd, and Love at Step I of ARF-19-02-0352-12F. (*Id.*, PageID.480). For this reason, Moore has not properly exhausted his administrative remedies as Kopka, Boyd, or Love. To constitute proper exhaustion under MDOC policy, a specific defendant must be identified at Step I of the process. *See* MDOC PD 03.02.130 § R; *see also Burton v. Jones*, 321 F.3d at 574 ("[W]e understand [MDOC] policies to preclude administrative exhaustion of a claim against a prison official if the first allegation of mistreatment or misconduct on the part of that official is made at Step II or Step III of the grievance process.").

Moreover, Moore alleged in this grievance that on August 5, 2018, Maly erroneously gave him the drug Giadon instead of Prozac. (ECF No. 66-2, PageID.485). His claims against Maly are set forth at ¶¶ 13-23 of his second amended complaint (ECF No. 48, PageID.320-322). But his claims against the current defendants arose from incidents alleged to have occurred between February and June of 2019, well after the date of this grievance. (*Id.*, PageID.323-324).

---

Steps I and II, the Court refers to this grievance as originally numbered: ARF-19-02-0352-12F.

In sum, Kopka, Boyd, and Love are entitled to summary judgment on the grounds that Moore failed to exhaust his administrative remedies  against them.

### 2.    Butts

In grievance no. ARF-19-02-0352-12F, Moore properly named Butts at Step I.  (ECF No. 66-2, PageID.480).  Butts however argues that because this grievance was denied as untimely at Step III, the issue was not properly exhausted.

The Step II response was dated March 12, 2019, the same date the Step II respondent received it. (*Id*., PageID.478).  Next to the respondent's signature and date is a notation stating "Date Returned to Grievant: 3-22-19." (*Id*.).  Under P.D. 03.02.130(FF), Moore's Step III appeal was due 10 business days after he *received* the Step II response, not the date the response was signed.  If the Step II response was returned to Moore on March 22, 2019, his Step III appeal was due on April 8, 2019, the same day it was filed.[7]  The Step III rejection affirms that Moore's appeal was received on April 8, 2019. (*Id*., PageID.477).  It appears that in rejecting the appeal based on untimeliness, the Step III grievance response incorrectly calculated the time from March 12, 2019.  In any event, Moore's Step

---

[7]To the extent that there is any ambiguity in the notation indicating a March 22, 2019 date of return to Moore, it must, in the context of a summary judgment motion, be resolved in Moore's favor.

III appeal was timely, and he has exhausted his administrative remedies as to Butts. Thus, Butts is not entitled to summary judgment based on exhaustion.

## B.    The Merits

Apart from the question of exhaustion, defendants contend that they are entitled to summary judgment because Moore's claims against them fail on the merits. As an initial matter, although the undersigned concludes that Moore's claims against Kopka, Boyd, and Love are unexhausted, it is appropriate to consider whether the claims against all four defendants are subject to dismissal on the merits, under Rule 12 or Rule 56. *See Hammock v. Wayne County Circuit Court, et al.*, No. 2:22-CV-10214, 2022 WL 611110, at \*1 (E.D. Mich. Mar. 1, 2022) (citing 42 U.S.C. § 1997e(c)(2) [8] and finding that "[w]here the plaintiff fails to state a claim upon which relief can be granted the claim can be dismissed without first requiring the exhaustion of administrative remedies."). *See also Bowen v. Cady*, No. 09-10414, 2010 WL 148843, at \*6, n.3 (E.D. Mich. Jan. 13, 2010) (stating that "[a]lthough [Section 1997e(c)] directly addresses a claim for

---

[8]Section 1997e(c)(2) provides:

> In the event that a claim is, on its face, frivolous, malicious, *fails to state a claim upon which relief can be granted*, or seeks monetary relief from a defendant who is immune from such relief, the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies. (Emphasis added).

relief that fails to state a claim on its face, it is equally applicable where the case has already progressed to the summary judgment stage…. [because] plaintiff's claims are without merit, the Court should grant summary judgment on the merits rather than require further exhaustion." (citations omitted)).

Here, although defendants have requested summary judgment under Rule 56(a) rather that dismissal under Rule 12(b)(6), Moore's claims would, for the reasons discussed below, nonetheless be dismissible on the face of the complaint without regard to the exhibits that have been submitted. Specifically as to the Eighth Amendment claims, Moore states in the second amended complaint he was given the wrong medication only one time by  Butts, Boyd, and Love, and that he did not ingest the medication. He does not plead that he was harmed.  As to Kopka, Moore pled that her only role was as a supervisor, and did not state that she had any personal involvement in the dispensing of the wrong medication.  As discussed below, Moore's Fourteenth Amendment claim against these defendants is defeated by the fact that he did not actually ingest the medication. Thus, regardless of how this motion is styled, Moore has in fact failed to state a claim upon which relief can be granted, and the case against the moving defendants is subject to dismissal under § 1997e(c)(2) apart from the question of exhaustion.

Moore's claims against each defendant, and defendants' merits based arguments, are addressed in turn below.

1.     Kopka

Defendants argue that summary judgement is proper as to Kopka because

Moore has not alleged that she was personally involved in the conduct which forms

the basis of the complaint. The plaintiff in a § 1983 case must show that a named

defendant was personally involved in the allegations underlying the

complaint. *Rizzo v. Goode*, 423 U.S. 362, 372 (1976); *Bellamy v. Bradley*, 729

F.2d 416 (6th Cir. 1984). Section 1983 liability "must be based on more

than *respondeat superior*, or the right to control employees." *Shehee v. Lutrell*,

199 F.3d 295, 300 (6th Cir. 1999). *See also Skinner v. Govorchin*, 463 F.3d 518,

525-26 (6th Cir. 2006)("there is no *respondeat superior* liability under §

1983); *Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989)

(Supervisory officials are personally liable in damages only for their own

unconstitutional behavior).

As noted above, Kopka was the Director of Nursing for ARF and other

facilities, until her retirement on December 14, 2018. (Kopka Declaration, ECF

No. 66-4, PageID.528). The alleged facts underlying Moore's claims against Butts

occurred on February 5, 2019 (ECF No. 48, PageID.323); the facts as to Boyd

occurred in April, 2019 (*Id*.); and the facts as to Love occurred on June 11, 2019

(*Id*.). Kopka had retired from the MDOC well before these events, and therefore

15

could not have had any personal involvement in Moore's claims.  In addition, even if she had been employed during that time, she had a supervisory position and would not have had vicarious or *respondeat superior* liability regarding the acts of Butts, Boyd, and Love.  Thus, Kopka is entitled to summary judgment based on a failure to establish her personal involvement.

### 2.    Boyd, Butts, and Love

### a.    Eighth Amendment Claim

Moore claims that by providing him with the wrong medication, Boyd, Butts, and Love were each deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment.  Defendants contend that the record fails to show a genuine issue of material fact as to whether they were deliberately indifferent, i.e.  reasonable minds could not differ that Moore has failed to establish deliberate indifference based on the facts.

Under the Eighth Amendment, prisoners have a constitutional right to medical care.  *Estelle v. Gamble,* 429 U.S. 97, 103 (1976).  Prison officials may not act with deliberate indifference to the medical needs of their prisoners.  *Id.* at 104.  An Eighth Amendment claim has two components, one objective and the other subjective.  *Farmer v. Brennan,* 511 U.S. 825, 834 (1994); *Comstock v. McCrary,* 273 F.3d 693, 702 (6th Cir. 2002).  Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Id.*  In

*Farmer*, the Court held that the objective test requires that "the inmate show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id*. at 834. *See also Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004). Under the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock* at 702.

On separate occasions, Boyd, Butts, and Love each provided Moore with the wrong medication. However, because, by his own testimony, Moore did not ingest any of that medication, and the error was remedied on each occasion, he has not shown a substantial risk of serious harm. In addition, Moore testified at deposition that although he knew that medications he received were intended for another prisoner, he did not know what the incorrect medications were. (ECF No. 66-6, PageID.539-540). Thus, he has offered no evidence that the incorrect medication carried the potential risk of serious harm even if it had been ingested. Thus, Moore has not met the objective test to show deliberate indifference.

Nor has Moore met the subjective prong of a deliberate indifference claim. In *Comstock*, 273 F.3d at 703, the Sixth Circuit held that "[t]he requirement that the official have subjectively perceived a risk of harm and then disregarded it is meant to prevent the constitutionalizing of medical malpractice claims; thus, a

17

plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment."

In *Barnett v. Luttrell*, 414 F. App'x 784 (6th Cir. 2011), the defendant nurse mistakenly gave the plaintiff Dilantin, an anti-seizure medication, instead of the ibuprofen that he was supposed to receive.  Despite the error, the Sixth Circuit rejected Barnett's deliberate indifference claim, the Court of Appeals stated, "Barnett alleges no facts suggesting that [defendant's] incorrect administration of Dilantin was anything other than negligent.  It thus constituted medical malpractice at most and cannot constitute an Eighth-Amendment violation." *Id*. at 788.

In *Horn v. Tuscola County*, No. 13-cv-14626, 2017 WL 1130095 (E.D. Mich., March 27, 2017), the plaintiff was given Ambien and Seroquel, two sleep medications, that were not prescribed for him.  The defendant then took steps to respond to the error by consulting the treating physician.  Rejecting the deliberate indifference claim, the district court held, "At most, giving plaintiff the incorrect medication amounts to negligence. And without more than negligence, 'incorrect administration of [medication]' cannot satisfy the subjective standard for an Eighth Amendment claim." *Id*. at *2 (quoting *Barnett*, 414 F. App'x at 788).  *See also Boone v. Grant*, 2019 WL 2442317, at *3 (W.D. Mich. June 12, 2019) ("The fact that [defendant] gave Plaintiff the wrong medication on one occasion is not sufficient to show deliberate indifference to Plaintiff's health or safety.").

18

Unlike the plaintiffs in *Barnett*, *Horn*, and *Boone*, Moore did not consume the medications that were mistakenly given to him, and the errors were corrected. As in *Boone*, each defendant here provided the wrong medication on only a single occasion. As in *Barnett*, Moore has not shown that these errors were the result of anything more than negligence. Overall, the record shows that Boyd, Butts, and Love are entitled to summary judgment on Moore's Eighth Amendment claims.

b.   Fourteenth Amendment Claim

Moore claims that by giving him the wrong medications, Boyd, Butts, and Love infringed upon his right to "bodily integrity" in violation of the Fourteenth Amendment. Defendants argue that the complained of conduct does not rise to the level of a Fourteenth Amendment claim. The undersigned agrees.

First, since Moore did not take the mistakenly provided medications, they never entered his body and could not have affected the "integrity of his body." But more importantly, as discussed above, Moore has not shown that these defendants' actions were the product of anything more than negligence, and mere negligence cannot be the basis of a Fourteenth Amendment due process claim. In *Daniels v. Williams*, 474 U.S. 327, 336 (1986), the Supreme Court held:

> Petitioner alleges that he was injured by the negligence of respondent, a custodial official at the city jail. Whatever other provisions of state law or general jurisprudence he may rightly invoke, the Fourteenth Amendment to the United States Constitution does not afford him a remedy.

19

Rather, a substantive due process claim requires a showing of government action that "shocks the conscience and violates the decencies of civilized conduct." *County of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998).  Here, Butts, Boyd, and Love each made a single negligent error in giving Moore the wrong medication.  In each case, the error was caught and Moore did not take the medication or suffer any ill effects.  This does not rise to a "shocks the conscience" level, and summary judgment should be granted as to Moore's Fourteenth Amendment claim..

### 3.   Qualified Immunity

Defendants also seek dismissal on the basis of qualified immunity. Qualified immunity is an affirmative defense.  A state official is protected by qualified immunity unless the plaintiff shows (1) that the defendant violated a constitutional right, and (2) the right was clearly established to the extent that a reasonable person in the defendant's position would know that the conduct complained of was unlawful.  *Saucier v. Katz*, 533 U.S. 194 (2001).  Under *Saucier*, the inquiry was sequential, requiring the district court to first consider whether there was a constitutional violation.  However, in *Pearson v. Callahan*, 555 U.S. 223, 129 (2009), the Supreme Court held that the two-step sequential analysis set forth in *Saucier* is no longer mandatory.  Rather, *Pearson* directed the order of inquiry to the judge's discretion, to be exercised on a case-by-case basis.

As discussed above, there was no constitutional violation in this case. Therefore, defendants are entitled to qualified immunity. *See Higgason v. Stephens*, 288 F.3d 868, 876 (6th Cir. 2002)("Plaintiff's case is barred by the affirmative defense of qualified immunity at the inception inasmuch as Plaintiff has failed to show a violation of a constitutionally protected right")(citing *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (*en banc*)).

### 4. Official Capacity Claims

Finally, defendants argue that to the extent Moore asserts claims against them in their official capacities, they are entitled to Eleventh Amendment immunity. *See Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (quoting *Cady v. Arenac Co.*, 574 F.3d 334, 344 (6th Cir. 2009)) ("[A]n official-capacity suit against a state official is deemed to be a suit against the state and is thus barred by the Eleventh Amendment, absent a waiver.").

Here, defendants were employees of the MDOC, and thus employees of the State of Michigan, during the times in which Moore complains. And, as the Sixth Circuit has noted, the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Moreover, Moore has not presented any evidence to suggest the state has consented to suit. Thus, defendants are entitled to summary judgment on any claims against them in their official capacity.

21

## V.    Conclusion

For the reasons stated above, it is RECOMMENDED that defendants'

motion for summary judgment be GRANTED on several grounds, as follows:

1.  Kopka, Boyd, and Love are entitled to summary judgment based
on Moore's failure to exhaust his administrative remedies.

2.  All defendants are entitled to summary judgment on Moore's
claims against them in their individual capacities for lack of merit and
based on qualified immunity.

3.  All defendants are entitled to summary judgment on Moore's
claims against them in their official capacities based on Eleventh
Amendment immunity.

The case continues against Maly, who has yet to be served.  The case

also continues against the "John/Jane Doe, Regional Health Administrators"

subject to an order to show cause.

Dated: March 25, 2022                          s/Kimberly G. Altman
Detroit, Michigan                              KIMBERLY G. ALTMAN
                                               United States Magistrate Judge


## <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>

The parties to this action may object to and seek review of this Report and

Recommendation.  Any objections must be filed within 14 days of service, as

provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).

Failure to file specific objections constitutes a waiver of any further right of

appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 25, 2022.

s/Carolyn M. Ciesla<br>
CAROLYN M. CIESLA