UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES MOORE,

    Plaintiff,

v.

DAWN MALY,

    Defendant.

_____/

Case No. 4:18-cv-13845
District Judge Matthew F. Leitman
Magistrate Judge Kimberly G. Altman

**<u>REPORT AND RECOMMENDATION TO GRANT
DEFENDANT DAWN MALY'S MOTION FOR
SUMMARY JUDGMENT (ECF No. 92)</u>**

I.    Introduction

This is a prisoner civil rights case under 42 U.S.C. § 1983. Plaintiff Charles Moore (Moore), proceeding *pro se*, sued several defendants, claiming they were deliberately indifferent to his serious medical needs and violated his right to bodily integrity by presenting him with the wrong medication and ordering him to ingest it. *See* ECF No. 48 (second amended complaint). Following motion practice, the only remaining defendant is Michigan Department of Corrections (MDOC) nurse Dawn Maly (Maly). *See* ECF Nos. 44, 84, 88. Under 28 U.S.C. § 636(b)(1), all pretrial matters were referred to the undersigned. (ECF No. 43).

Before the Court is Maly's motion for summary judgment, arguing that

Moore cannot establish his Eighth and Fourteenth Amendment claims sufficient to survive summary judgment. (ECF No. 92). For the reasons that follow, the undersigned RECOMMENDS that her motion be GRANTED.

## II. Background

### A. Moore's Complaint

On December 11, 2018, Moore filed a complaint against Corizon Health, Inc. (Corizon) and Maly.[1] (ECF No. 1). On February 12, 2019, Moore filed an amended complaint, naming Maly and Janet Campbell, an MDOC health unit manager, as defendants. (ECF No. 16). By stipulation of the parties, on March 3, 2019, Corizon was dismissed. (ECF No. 18).

On December 11, 2020, Moore filed a second amended complaint against several MDOC employees, including Maly. (ECF No. 48). All defendants except Maly were granted summary judgment on May 12, 2022, (ECF No. 84), upon the district court's adoption of the undersigned's Report and Recommendation, (ECF No. 79).[2]

---

[1] Initial attempts to serve Maly were unsuccessful as it appears she was not employed by the MDOC at the time of the initial attempt at service. Maly was eventually served on March 25, 2022, (ECF No. 83), and counsel filed a notice of appearance on her behalf in July 2022, (ECF No. 89).

[2] Moore's second amended complaint also named as defendants "Jane/John Doe, Regional Health Administrators" who were dismissed after Moore was unable to identify them. (ECF No. 88).

In the second amended complaint, Moore makes the following allegations regarding Maly.

During the relevant period, Moore was an MDOC inmate at Gus Harrison Correctional Facility (ARF). (ECF No. 48, PageID.319). He was receiving treatment for various medical conditions, including Type II diabetes, hypertension, post-traumatic stress disorder, and depression. (*Id.*, PageID.320). Moore was prescribed medications including Prozac, which he received at the restricted medication line window (Med-Line). (*Id.*, PageID.320-321). Moore explained that Prozac has a distinctive and readily-recognizable outer appearance. (*Id.*).

On August 5, 2018, Maly gave Moore a pill that looked different from Prozac at Med-Line and insisted that he take it. (*Id.*, PageID.321). Moore complied. (*Id.*). This pill turned out to be Geodon, a powerful antipsychotic medication that was prescribed to a different inmate. (*Id.*).

After taking Geodon, Moore became "extremely sleepy and began experiencing . . . severe nausea, bodily tremors, muscle weakness, diaphoresis (excessive perspiration), and an excruciating headache[.]" (*Id.*). Moore was seen by health care and released later that day, while still feeling the effects of the drug. (*Id.*). A health care officer believed that Moore should not walk back to his cell alone, so she assisted him part of the way and then asked another prisoner to escort Moore back to his unit. (*Id.*, PageID.322).

The next day, Moore was still experiencing side effects from Geodon and visited health care. (*Id.*). He was issued a "no work" detail and instructed to rest and drink plenty of fluids. (*Id.*).

Moore further alleged that on three future occasions in 2019, he was given the wrong medication by other former defendants in this case, but that on each occasion he did not ingest the medication as he had on August 5, 2018. (*Id.*, PageID.323). On each of these four occasions, Moore was given prescriptions that were prescribed to prisoners with the same last name as him. (*Id.*). He asserts that "ALL" manufacturer medication cards are clearly labeled with a prisoner's name and number in order to prevent a prisoner from receiving the wrong medication. (*Id.*, PageID.324).

Moore asserts the following claims against Maly: deliberate indifference to his medical needs in violation of the Eighth Amendment and violation of the right to bodily integrity as protected by Fourteenth Amendment due process rights. (*Id.*, PageID.326-327). He requests actual, compensatory, punitive and exemplary damages for each claim, as well as attorney fees, costs, interest, and such other legal and/or equitable relief as appears just and proper. (*Id.*, PageID.327-328).

B.  Record Evidence

At Moore's deposition, which occurred on October 5, 2022, he described the incident where he was given the wrong medication by Maly as follows:

4

9   Q   Once you got up to the front of the line, Nurse Maly handed
10      you some medication?
11  A   Yes. Well, you know, there's a protocol that's in place.
12      At the time it was called, "the five R's of medication
13      administration." Now it's the six R's; it's been updated.
14      But at the time, it was five. And I did what I'm supposed
15      to do. I walked up to the window, held my ID up to the
16      window. You know, she never looked at my ID once; not one
17      time. She looked at my face, and they have a thing here
18      where they -- they assume that they know everyone's face,
19      and can -- and can automatically know the name that goes
20      with the face, and what to go for.
21              So when she saw my face, I guess it registered
22      "Moore," which was correct. So she -- I stood there, she
23      got the meds, and when she handed them, she put them through
24      the turnstile, and when I picked the cup up with the med in
25      it, I looked at it and I said, "Excuse me, Ms. Maly, this

1       isn't my med." I said, "My" -- I described my med to her.
2       And she said, "You're name Moore, ain't it?" I said, "Yes,
3       ma'am." She looked at the card again. She said, "You take
4       Prozac, don't you?" I said, "Yes, ma'am, I do." I said,
5       "But this isn't my med." She said -- what did she tell
6       me? -- she said, "The reason" -- she said, "It might look a
7       little different today." She said, "Because we just got a

5

```
 8      new vendor."  She said, "So the pills are coming in a
 9      different shape and color now."  So -- and actually, I
10      assumed -- "Okay.  That makes sense," you know.  And then I
11      wound up taking the med, in a nutshell.
12              You know, and it come -- as it turns out, it
13      wasn't Prozac; it was Geodon, and it was from a prisoner
14      Wesley Moore, not Charles Moore.  Okay?  And this isn't the
15      first time that she gave me the wrong med.  It had happened
16      before.  And at least it had happened several times, and it
17      happened after that; she gave me a wrong med.  And -- and
18      that's basically what I did, you know.
```

(ECF No. 92-3, PageID.752-753). Moore also testified that Maly "threatened" him and told him that if he did not take the medication, he was going to get a misconduct. (*Id.*, PageID.754).

Maly, however, asserts in a sworn declaration that she has "never ordered a prisoner to take medicaton[,]" and further, that she cannot force prisoners to take medications, that they are allowed to refuse medication per policy, and that they do not receive misconducts for refusing medication. (ECF No. 92-6, PageID.772-773). Maly also notes that on the future occasions Moore alleges he was given the wrong pill, he simply refused to take it. (ECF No. 92, PageID.723 (citing ECF No. 48, PageID.321; ECF No. 92-3, PageID.754)). She further states that "Prozac

6

often comes as a blue pill[3] as well[,]" thus, any mistake regarding the blue pill that Moore was given could have been due to this. (*Id.*, PageID.772).

Medical records indicate that Moore was seen by a provider, Mary A. Greiner, D.O., on August 5, 2018 after having ingested the wrong pill, and that he was alert and oriented; able to verbalize needs; had vitals within medical guidelines; normal heart rhythm; and easy, unlabored breathing. (ECF No. 92-4, PageID.759). He complained of light-headedness, nausea, and weakness at that time. (*Id.*). The next morning, he presented to health care with similar symptoms and had his vitals measured by Cody Stratton, R.N, with no issues being noted. (*Id.*, PageID.760). As Moore alleged, he was provided with a "no work" detail and advised to increase his liquid intake and rest when able. (*Id.*).

The August 5, 2018 incident was also memorialized in a Medication Incident form submitted by Maly. (ECF No. 92-8). This form noted that Moore was given 40mg of Geodon instead of his prescribed 10mg of Prozac, and that the error occurred because he shared the last name "Moore" with another inmate who was prescribed Geodon. (*Id.*). Maly was counseled to read the names on medication cards more thoroughly and her performance was to be monitored for

---

[3] *See* https://www.poison.org/articles/generic-drugs-versus-brand-name-drugs ("Many different drug companies may make versions of the same medicine. For example, the drug Prozac® is a brand name. Its generic name is fluoxetine. . . . Medicine may look different each time you refill a prescription, if the pharmacy orders from different drug companies." (last accessed Mar. 7, 2023).

180 days. (*Id.*).

### III. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.' " *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The fact that Vontz is *pro se* does not reduce his obligations under Rule 56.

Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). Additionally, "once a case has progressed to the summary judgment stage, as is true here, the liberal pleading standards under the Federal Rules are inapplicable." *J.H. v. Williamson Cnty.*, 951 F.3d 709, 722 (6th Cir. 2020) (quoting *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005)) (cleaned up).

## IV. Discussion

### A. Eighth Amendment Claim

Moore claims that by providing him with the wrong medication, Maly was deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment. Maly contends that the record fails to show a genuine issue of material fact as to whether she was deliberately indifferent, i.e., reasonable minds could not differ that Moore has failed to establish deliberate indifference based on the facts.

Under the Eighth Amendment, prisoners have a constitutional right to medical care. *Estelle v. Gamble,* 429 U.S. 97, 103 (1976). Prison officials may not act with deliberate indifference to the medical needs of their prisoners. *Id.* at 104. An Eighth Amendment claim has two components, one objective and the other subjective. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994); *Comstock v.*

9

*McCrary,* 273 F.3d 693, 702 (6th Cir. 2002). Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.' " *Id.* In *Farmer*, the Court held that the objective test requires that "the inmate show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* at 834; *see also Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004). Under the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock*, 273 F.3d at 702.

Unlike the incidents in 2019, Moore did in fact ingest the wrong medication that was dispensed to him by Maly on August 5, 2018. This, and the fact that Moore experienced some side effects as a result of this ingestion, is beyond dispute. Thus, Maly "[assumes,] for the purposes of this motion only, that Geodon may be medically harmful to Moore, [and that] Moore can meet the objective standard." (ECF No. 92, PageID.729). But Maly says that Moore cannot satisfy the subjective prong of the deliberate indifference test.

Citing several cases, Maly contends that the mistaken dispersal of the wrong medication does not rise to the level of a constitutional violation. *See*, *e.g.*, *James v. Fed. Bureau of Prisons*, 79 F. App'x 417, 418-19 (10th Cir. 2003) (holding that plaintiff failed to allege Eighth Amendment deliberate-indifference claim against

10

defendants where a pharmacist dispensed the wrong substance); *Stewart v. Campbell*, No. 2:17-CV-192, 2019 WL 1233635, at *3 (E.D. Tenn. 2019) (concluding that allegation that defendant on a single occasion gave plaintiff the wrong medication amounts to no more than an assertion of negligence instead of a plausible Eighth Amendment claim); *Winfree v. S. Health Partners*, No. 3:14-CV01269, 2014 WL 3015373, at *2 (M.D. Tenn. 2014) (noting that where a nurse dispensed incorrect medication, allegations of negligence do not state a claim under § 1983); *Wicker v. Lawless*, 278 F. Supp. 3d 989, 1006 (S.D. Ohio 2017) ("A defendant who negligently dispenses the wrong medication does not violate 42 U.S.C. § 1983.") (citation omitted); *Boone v. Grant*, No. 2:19-cv-97, 2019 WL 2442317, at *1 (W.D. Mich. 2019) ("The fact that [the defendant] gave Plaintiff the wrong medication on one occasion is not sufficient to show deliberate indifference to Plaintiff's health or safety."). (ECF No. 92, PageID.732-733).

Here, Maly mistakenly gave Moore the wrong medication when she recognized the blue pill as being Prozac and had taken the medication card of a different inmate with the same last name. This amounts to no more than negligence, which is not actionable under the Eighth Amendment. Cases from this circuit and district support this conclusion. For example, in *Comstock*, 273 F.3d at 703, the Sixth Circuit held that "[t]he requirement that the official have subjectively perceived a risk of harm and then disregarded it is meant to prevent

11

the constitutionalizing of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment." Additionally, in *Barnett v. Luttrell*, 414 F. App'x 784 (6th Cir. 2011), the defendant nurse mistakenly gave the plaintiff Dilantin, an anti-seizure medication, instead of the ibuprofen that he was supposed to receive. Despite the error, the Sixth Circuit rejected Barnett's deliberate indifference claim, explaining: "Barnett alleges no facts suggesting that [the defendant's] incorrect administration of Dilantin was anything other than negligent. It thus constituted medical malpractice at most and cannot constitute an Eighth-Amendment violation." *Id*. at 788. Finally, in *Horn v. Tuscola Cnty.*, No. 13-cv-14626, 2017 WL 1130095 (E.D. Mich. Mar. 27, 2017), the plaintiff was given Ambien and Seroquel, two sleep medications, that were not prescribed for him. The defendant then took steps to respond to the error by consulting the treating physician. Rejecting the deliberate indifference claim, the district court held, "[a]t most, giving plaintiff the incorrect medication amounts to negligence. And without more than negligence, 'incorrect administration of [medication]' cannot satisfy the subjective standard for an Eighth Amendment claim." *Id*. at *2 (quoting *Barnett*, 414 F. App'x at 788).

In his response, Moore asserts for the first time that Maly "was trying to kill" him. (ECF No. 100, PageID.828). He references a news article in which a nurse in Tennessee was found guilty of criminally negligent homicide after

12

injecting a patient with the wrong medication, resulting in the patient's death. (*Id.*, PageID.855-863). It is well-established, however, that Moore may not raise new claims or substantive allegations at this stage. *See*, *e.g.*, *Bridgeport Music, Inc. v. WM Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007) ("To the extent [the plaintiff] seeks to expand its claims to assert new theories, it may not do so in response to summary judgment or on appeal."). Furthermore, the results of an unrelated criminal matter in which accidental administration of the wrong medication resulted in death are not relevant to the facts of this case.

Moore also contends that he satisfies the subjective prong of the deliberate indifference test because the risk here was "obvious," and that Maly was "repeatedly reckless or indifferent" to his medical needs, citing *Hope v. Pelzer*, 536 U.S. 730 (2002) and *Vandiver v. Prison Health Servs., Inc.*, 727 F.3d. 580 (6th Cir. 2013). (ECF No. 100, PageID.820-821).

In *Hope*, a guard handcuffed plaintiff,

> placed him in leg irons and transported him back to the prison where he was put on the hitching post. The guards made him take off his shirt, and he remained shirtless all day while the sun burned his skin. He remained attached to the post for approximately seven hours. During this 7–hour period, he was given water only once or twice and was given no bathroom breaks. At one point, a guard taunted [the plaintiff] about his thirst. According to [the plaintiff's] affidavit: "[The guard] first gave water to some dogs, then brought the water cooler closer to me, removed its lid, and kicked the cooler over, spilling the water onto the ground."

536 U.S. at 734-735 (internal footnotes omitted). In *Hope*, the risk of harm was

13

obvious enough that the subjective state of mind required to establish deliberate indifference could be inferred.

This case is not like *Hope*. The record shows only one instance where Maly gave Moore the wrong medication, which falls short of being an obvious risk that was then disregarded.

In *Vandiver*, the Sixth Circuit found that "a continued failure to treat appropriately a chronic illness may constitute imminent danger of serious physical injury." 727 F.3d at 586. *Vandiver*, however, did not address the subjective prong of the deliberate indifference test. And as noted before, Moore has not shown that Maly is liable for *continued* failures. Thus, *Vandiver* does not help Moore's case.

Moore's other arguments are also without merit. Moore argues that Maly failed to follow applicable MDOC operating procedures when she dispensed the wrong medication to him. (ECF No. 100, PageID.826, 830). But "Section 1983 remedies violations of federal law, not state law or prison policy." *Worthey v. Miniard*, No. 2:22-CV-11164, 2022 WL 16556027, at *4 (E.D. Mich. Oct. 31, 2022) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney v. Farley*, 501 F.3d 577, 580-81 (6th Cir. 2007)). "Alleged violations of Michigan law or MDOC policy do not rise to the level of a violation or deprivation of a federal constitutional right cognizable under § 1983." *Id*. (citing *Grinter v. Knight*, 532 F.3d 567, 574 (6th Cir. 2008); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir.

14

2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-2347. 1995 WL 236687, *1 (6th Cir. April 21, 1995); *Coleman v. Martin*, 363 F. Supp. 2d 894, 903 (E.D. Mich. 2005)).

Moore also argues that prisoners can, in fact, receive misconduct tickets for refusal to take their medications at Med-Line. (ECF No. 100, PageID.827, 871). As evidence of this, Moore attaches a misconduct report from another inmate, Wesley Moore, who received a misconduct for not showing up to his Med-Line call-out. (*Id.*, PageID.867). But as Maly points out, this is different from attending one's Med-Line call-out and refusing the medication there, which she has attested cannot be the subject of a misconduct ticket. Moore also attests in his sworn affidavit that prisoners can receive misconduct tickets for "failing to ingest their medications after receiving them" or "being caught cheeking their medications," referring to a prisoner pretending to ingest his medication but placing it elsewhere in his mouth. (*Id.*, PageID.871). Again, this is not the same as refusing one's medication.

Regardless, even if there is a genuine issue of fact as to whether a prisoner could receive a misconduct for not taking his medication at Med-Line, it is not a *material* fact. Maly has conceded for purposes of this motion that Moore took the wrong medication and therefore has satisfied the objective prong of the deliberate indifference test. Her subjective awareness in giving Moore another prisoner's

Geodon instead of his Prozac is not affected by the issue of whether Moore would have received a misconduct ticket for refusing the medication.

For all the reasons stated above, Moore has not satisfied the subjective requirement to show that Maly acted with deliberate indifference to a serious medical need. Summary judgment is therefore appropriate on his Eighth Amendment claim.

### B. Fourteenth Amendment Claim

Moore claims that by giving him the wrong medication, Maly infringed upon his right to "bodily integrity" in violation of the Fourteenth Amendment. Maly, in turn, argues that the complained of conduct does not rise to the level of a Fourteenth Amendment claim. The undersigned agrees.

The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. This provision "guarantee[es] more than fair process." *Washington v. Gluksberg*, 521 U.S. 702, 719 (1997). It includes a substantive component, "barring certain government actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*, 474 U.S. 327, 331 (1986); *see also Cty. Of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998). To bring a Fourteenth Amendment substantive due process claim, a plaintiff first must demonstrate a deprivation of a constitutionally protected liberty interest. *Guertin*

16

*v. State*, 912 F.3d 907, 918 (6th Cir. 2019). Once a plaintiff shows the deprivation of a constitutionally protected liberty interest, he then "must show how the government's discretionary conduct that deprived that interest was constitutionally repugnant." *Id.* at 922.

"Bodily integrity cases usually arise in the context of government-imposed punishment or physical restraint, but that is far from a categorical rule." *Id*. at 919 (internal quotation marks omitted). "Involuntarily subjecting nonconsenting individuals to foreign substances with no known therapeutic value—often under false pretenses and with deceptive practices hiding the nature of the interference—is a classic example of invading the core of the bodily integrity protection." *Id*. at 920–21. However, mere negligence "is categorically beneath the threshold of constitutional due process[.]" *Id*. at 924 (internal quotation marks omitted).

As discussed above, Moore has not shown that Maly's actions were the product of anything more than negligence, which cannot be the basis of a Fourteenth Amendment due process claim. In *Daniels v. Williams*, 474 U.S. 327, 336 (1986), the Supreme Court wrote:

> Petitioner alleges that he was injured by the negligence of respondent, a custodial official at the city jail. Whatever other provisions of state law or general jurisprudence he may rightly invoke, the Fourteenth Amendment to the United States Constitution does not afford him a remedy.

Here, Maly made a single negligent error in giving Moore the wrong medication.

17

Despite the ill effects of the medication, this does not "shock the conscience" as a violation of bodily integrity. Reasonable minds could not conclude otherwise.

Additionally, Moore's claim sounds more clearly under the Eighth Amendment, as discussed above. The result of this is that Moore's Fourteenth Amendment claim "must be dismissed[,] because specific constitutional provisions in the Eighth Amendment control over the Fourteenth Amendment's general due process provisions." *Rhodes v. Mich.*, No. 2:17-CV-12416-TGB, 2020 WL 978296, at *12 (E.D. Mich. Feb. 28, 2020), *aff'd in part, rev'd in part and remanded on other grounds*, 10 F.4th 665 (6th Cir. 2021). "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Maly is therefore entitled to summary judgment on Moore's Fourteenth Amendment claim.

C. Official Capacity Claims

Finally, Maly argues that to the extent Moore asserts claims against her in her official capacity, she is entitled to Eleventh Amendment immunity. *See Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (quoting *Cady v. Arenac Co.*, 574 F.3d 334, 344 (6th Cir. 2009)) ("[A]n official-capacity suit against a state official

is deemed to be a suit against the state and is thus barred by the Eleventh Amendment, absent a waiver.").

Here, Maly was an employee of the MDOC, an agency of the State of Michigan, and was thus an employee of the State of Michigan at all relevant times. As the Sixth Circuit has long noted, the State of Michigan has not consented to civil rights suits in federal court. *See*, *e.g.*, *Abick v. Mich.*, 803 F.2d 874, 877 (6th Cir. 1986). Moreover, Moore has not presented any evidence to suggest the state has consented to suit in this instance. Thus, Maly is entitled to summary judgment on any claims against her in her official capacity.

V. Conclusion

For the reasons stated above, it is RECOMMENDED that Maly's motion for summary judgment, (ECF No. 92), be GRANTED.

Dated: March 8, 2023  　　　　　　　　s/Kimberly G. Altman
Detroit, Michigan  　　　　　　　　　　KIMBERLY G. ALTMAN
　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

**NOTICE TO PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation. Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 8, 2023.

s/Carolyn M. Ciesla  
CAROLYN M. CIESLA  
Case Manager
