UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES MOORE,

       Plaintiff,                               Case No. 18-cv-13845

                                                 Hon. Matthew F. Leitman

v.

CORIZON HEALTH INC. *et al.*,

       Defendants.

_____/

## ORDER (1) OVERRULING PLAINTIFF'S OBJECTIONS (ECF No. 107) TO REPORT AND RECOMMENDATION (ECF No. 103), (2) ADOPTING RECOMMENDED DISPOSITION OF REPORT AND RECOMMENDATION, AND (3) GRANTING DEFENDANT DAWN MALY'S MOTION FOR SUMMARY JUDGMENT (ECF No. 92)

Plaintiff Charles Moore is a state inmate in the custody of the Michigan Department of Corrections (the "MDOC"). In this *pro se* civil-rights action, Moore alleges that Defendant Dawn Maly, a Licensed Practical Nurse ("LPN") employed by the MDOC, was deliberately indifferent to his serious medical needs when she provided him the wrong medication while Moore was incarcerated at the Gus Harrison Correctional Facility ("Gus Harrison"). (*See* Sec. Am. Compl., ECF No. 48.) Moore says that after Maly gave him the wrong medication, he suffered a serious negative reaction that forced him to miss time from his prison work duty. (*See id.*)

1

Maly has now moved for summary judgment. (*See* Mot., ECF No. 92.)  The motion was referred to the assigned Magistrate Judge, and on March 8, 2023, the Magistrate Judge issued a Report and Recommendation in which she recommended that the Court grant Maly's motion (the "R&R"). (*See* R&R, ECF No. 103.)  Moore thereafter filed objections to the R&R. (*See* Objections, ECF No. 107.)  The Court held a hearing on the objections on August 11, 2023.

The Court has carefully considered Moore's objections and the arguments presented at the hearing, and for the reasons explained below, it **OVERRULES** the objections.  It therefore **ADOPTS** the recommended disposition of the R&R and **GRANTS** Maly's motion for summary judgment.

## I

### A

The relevant facts of this case were described in detail in the R&R. (*See* R&R, ECF No. 103, PageID.886-891.)  In brief, Moore is incarcerated at Gus Harrison. (*See* Sec. Am. Compl. at ¶4, ECF No. 48, PageID.319.)  At all relevant times, Moore "was receiving ongoing treatment for several serious medical conditions, including […] type II diabetes, hypertension, and post traumatic stress disorder." (*Id.* at ¶11, PageID.320.)  One of the medications that Moore was prescribed for his conditions was Prozac. (*See id.* at ¶13, PageID.320-321.)  "Prior to, and after the date at issue, the form of Prozac dispensed to [Moore] had a very distinctive and readily-

2

recognizable outer appearance as a white capsule with two green stripes around the entire [pill]." (*Id.* at ¶14, PageID.321.)  Moore received his medications from what is known as the "Med-Line" at Gus Harrison. (*Id.* at ¶12, PageID.320.)  The Med-Line is where pills are distributed by MDOC employees to inmates. (*Id.*)

On the date at issue, one of the MDOC employees distributing pills at the Med-Line was Maly. (*See id.* at ¶15, PageID.321.) When Moore approached front of the Med-Line, he "held up" his prisoner identification card to the Med-Line window. (Moore Dep., ECF No. 92-3, PageID.752.)   Maly "never looked at [Moore's] ID." (*Id.*)  Instead, she looked at Moore's face, appeared to recognize him, and began gathering his medication. (*See id.*)  She then presented Moore a pill that was not a white capsule with two green stripes. (*See id.*)  Moore looked at the pill, recognized that it did not look like the Prozac pills he had been taking, and said "Ms. Maly, this isn't my med." (*Id.*)  Maly responded, "You're name Moore, ain't it?" (*Id.*) When Moore said that yes, his name was Moore, Maly "looked at the card again"[1] and said "You take Prozac, don't you?" (*Id.*) Moore again answered "yes." (*Id.*)  But he then tried to explain that the medication Maly gave him did not look like Prozac. (*Id.*)  Maly responded that the pill "might look a little different today […] because we just got a new vendor […] so the pills are coming in a different

---

[1] The "card" that Maly looked at was not Moore's prisoner identification card. Instead, it appears that Maly was looking at a medication card that lists each prisoner's name and the medication that they are taking.

shape and color now." (*Id.*)  Based on that response, and based on pressure Moore says that Maly put on him to take his medication so that she could keep the Med-Line moving, Moore ingested the pill Maly that gave him.

As it turns out, Moore was right: the pill that Maly gave him was not Prozac. Instead it was a powerful anti-psychotic medication called Geodon. (*See id.*)  That medication was prescribed to a different inmate with the same last name as Moore – a man named Wesley Moore. (*See id.*)  When Moore took the Geodon pill, he suffered a negative reaction that included light-headedness, nausea, and weakness. (*See* ECF No. 92-4, PageID.759.)  He was excused from work detail for the day and told to increase his fluid intake and rest. (*See id.*)  He later recovered and returned to stable condition.

**B**

After Moore reported that Maly had given him the wrong medication, the MDOC investigated the incident.   The MDOC's findings were recorded in a "Medication Incident" form.   (*See* Medication Incident Form, ECF No. 92-8, PageID.799.)  The MDOC described the incident as "Pt [Moore] ordered 10 mg of Prozac at noon, was given 40 mg of Geodon." (*Id.*)  Maly was identified as the person "responsible for [the] error." (*Id.*)  The MDOC appeared to conclude that the error occurred because both Moore and Wesely Moore, who was the inmate prescribed Geodon, had "names [that] both ended in Moore." (*Id.*)  As a result of the incident,

4

Maly "was counseled on not reading the names on both cards thoroughly" and "be[ing] more careful with similar names" in the future. (*Id.*)  In addition, the MDOC decided to "monitor[]" Maly's "performance" for 180 days. (*Id.*).

C

On December 11, 2018, Moore, appearing *pro se*, filed this action against several MDOC employees. (*See* Compl., ECF No. 1; Sec. Am. Compl., ECF No. 48.)   The only remaining claims are against Maly.   In his Second Amended Complaint, the operative pleading in this action, Moore alleges that when Maly provided him the wrong medication she (1) was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment and (2) violated his right to bodily integrity under the Fourteenth Amendment. (*See* Sec. Am. Compl., ECF No. 48.)

Maly moved for summary judgment on November 7, 2022. (*See* Mot., ECF No. 92.)  Maly primarily argued that while she did provide the wrong medication to Moore, it was a mere mistake that did not amount to deliberate indifference or violate Moore's constitutional rights. (*See id.*)

The Court referred Maly's motion to the assigned Magistrate Judge.   On March 8, 2023, the Magistrate Judge issued the R&R in which she recommended that the Court grant Maly's motion. (*See* R&R, ECF No. 103.)  The Magistrate Judge concluded that Maly made a mistake about the identity of the medication that she

provided Moore, but that that mistake "amount[ed] to no more than negligence, which is not actionable" under either the Eighth or Fourteenth Amendments. (*Id.*, PageID.895-896, 901-902.)   Finally, the Magistrate Judge concluded that to the extent Moore brought claims against Maly in her official capacity, those claims were barred by sovereign immunity. (*See id.*, PageID.902-903.)

Moore filed objections to the R&R on June 26, 2023.[2] (*See* Objections, ECF No. 107.)  The Court then held a video hearing on the objections where it heard argument from both Maly's counsel and Moore.

## II

When a party objects to portions of a Magistrate Judge's report and recommendation, the Court reviews those portions *de novo.  See* Fed. R. Civ. P. 72(b)(3); *Lyons v. Comm'r of Soc. Sec.*, 351 F.Supp.2d 659, 661 (E.D. Mich. 2004). The Court has no duty to conduct an independent review of the portions of the R & R to which the parties did not object. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985).

---

[2] Moore has also filed a motion for the appointment of counsel. (*See* Mot., ECF No. 110.)  For the reasons explained on the record during the Court's hearing on Moore's objections, the Court believes that Moore has ably represented himself in these proceedings and that appointing counsel is not necessary.  Both Moore's written submissions and his responses to the Court's questions at the hearing were clear and allowed the Court to carefully consider the issues he raised.  Moore's motion for the appointment of counsel is therefore **DENIED**.

6

## III

Moore raises several objections to the R&R.  The Court will address each separately below.  In sum, the Court agrees with the Magistrate Judge that based on Moore's own version of events, what happened here was a mere negligent mistake about the identity of the medication he was given, not a deliberately indifferent decision by Maly to provide him the wrong medication.  And that mistake, while unfortunate, did not violate Moore's constitutional rights.  Thus, the Court will overrule Moore's objections and grant Maly's motion for summary judgment.

## A

In Moore's first objection, he argues that the Magistrate Judge failed to consider evidence that Maly breached her job duties days before she gave Moore the wrong pill. (*See* Objections, ECF No. 107, PageID.915-916.)  And Moore contends that these earlier breaches, when considered in conjunction with Maly's conduct on the day she gave Moore the wrong pill, are sufficient to establish Maly's liability. (*See id.*)  More specifically, Moore says that (1) "Maly regularly worked at the Med-Line window," (2) Wesley Moore, the inmate who was prescribed the Geodon medication that Maly mistakenly provided to Moore, "never reported to the [M]ed-[L]ines," (3) Maly was obligated to report Wesley Moore's non-appearance in the Med-Line to Gus Harrison's mental health team, and (4) "if Maly had acted within the scope of her duties," and informed the mental health team that Wesley Moore

7

was not reporting to the Med-Line, "the mental health team would have been made aware that Wesely Moore no longer wanted to the medication Geodon and his pills would have been removed from the drug cart." (*Id.*)   The removal of Wesley's Moore's medications from the medication cart, Moore insists, "would have immediately eliminated [his] risk of being given the wrong medication." (*Id.*)

The fundamental problem with this argument is that it rests on speculation. Moore has not cited any *evidence* that if Maly had informed the mental health team that Wesley Moore was not appearing in the Med-Line, the team would have directed the removal of Wesley Moore's medication from the medication cart.   Nor does logic compel the conclusion that the mental health team would have done so.   Indeed, it seems (at least) equally likely that if the mental health team had learned that Wesley Moore was not appearing in the Med-Line, the team would have counseled Wesley Moore on the importance of taking his medication and taken steps to increase the likelihood that he would do so – all while leaving his medication in the cart.   Thus, the Court overrules this objection because it is not supported by sufficient evidence.

**2**

Moore next objects that the Magistrate Judge did not fully consider his argument that Maly failed to look at his prisoner identification card when she provided him the wrong medication.   Moore argues that:

8

> In her own sworn declaration[,] Maly asserts that she
> trained and knows the policies and protocols of medication
> administration. Therefore, Maly admits that she had
> knowledge of the asserted serious need to follow policy
> and procedure [….] On August 5, 2018, Plaintiff held up
> his prisoner identification card, which contains his full
> name and prisoner number, for Maly to compare with his
> [medication] card. Many **<u>never</u>** looked at the
> identification card and instead looked at [Moore's] face.
> Then used her memory from previous encounters to recall
> the name 'Moore,' which resulted in Plaintiff being given
> the wrong medication. This deviation from clearly
> established policy and protocols [satisfies] the subjective
> standard of deliberate indifference.

(Objections, ECF No. 107, PageID.916; emphasis in original; punctuation and
citations omitted).

This objection fails because it cannot be reconciled with Moore's own version
of events – as offered during his deposition. According to Moore's account, Maly's
alleged failure to look at his prisoner identification card was not the cause of his
injury. On the contrary, Moore testified that before Maly dispensed the Geodon to
him, she confirmed that Moore was the inmate named Moore who took Prozac. (*See*
Moore Dep., ECF No. 92-3, PageID.752.) Thus, based on Moore's own testimony,
Maly's dispensing of the wrong medication did not result from the mis-identification
of Moore; instead, it resulted from her mis-identification of the medication in
question. Thus, Maly's alleged failure to review Moore's prisoner identification
card does not support Moore's theory of liability here, and the Magistrate Judge did

not err in failing to attach more weight to that failure.[3]   Thus, this objection is overruled.

## C

Next, Moore argues that the Magistrate Judge wrongly rejected his attack on Maly's explanation as to how she mistook Geodon for Prozac.  As noted above, Moore says that when he pointed out to Maly that the pill she gave him did not look like his usual Prozac, she explained that the pill appeared different because there had been a recent change in pharmacy vendor, and that change led to Prozac being obtained from a different supplier. (*Id.*)  Moore contends, however, that Maly must have known that that explanation was false because the change in pharmacy vendor actually occurred in 2016, two years *before* he received the wrong medication from Maly.  Thus, Moore says, Maly could not have been telling the truth when she said his pill suddenly looked different because of a change in vendor:

> Plaintiff also objects to Maly's assertion she 'mistakenly gave Moore the wrong medication when she recognized the blue pill as being Prozac and had taken the medication card of a different inmate with the same last name.'  This

---

[3] At the hearing on Moore's objections, the Court asked Maly's counsel several questions about the MDOC's Medication Incident Form and whether that form was evidence that the MDOC had concluded that the reason Moore received the wrong medication was because Maly had failed to look at Moore's prisoner identification card.  However, upon closer review of the Medication Incident Form, the Court concludes that the form reflects a failure of Maly to look at Moore's *medication* card, *not* his prisoner identification card.  Thus, the Medication Incident Form is not evidence that Maly's failure to look at Moore's prisoner identification card caused Maly to dispense the wrong medication to Moore..

> is contradicted by Moore's declaration that: 'LPN Maly became hostile and told me the reason the pill looked different was because the facility had started using a new medication vendor.'  According to the affidavit of Delaca Reynolds-Barnes, Vice-President Pharamy, Correctional Pharmacy of Maxor Correctional Pharmacy Services [], Pharmacorr assumed the operation of the pharmacy for the MDOC on June 1, 2016, and continues to this day.

(Objections, ECF No. 107, PageID.917; internal citations omitted).

Moore's reliance on the Reynolds-Barnes affidavit is misplaced.  The affidavit does not say anything about whether or when the MDOC switched to a new vendor for Prozac.  Instead, the affidavit says only that in 2016 a new company would be "assuming" certain pharmacy operations. (Reynolds-Barnes Aff. at ¶2, ECF No. 100, PageID.853.)  But assuming operations of a pharmacy says nothing about where the pharmacy's pills are coming from or what those pills look like. Thus, contrary to Moore's suggestion, the affidavit is not evidence that any change in Prozac vendor must have occurred in 2016 when the new company assumed the pharmacy operations.

Moreover, the Reynolds-Barnes affidavit speaks only to operations at one particular MDOC facility – a facility where Moore was not incarcerated.  More specifically, Reynolds-Barnes said in her affidavit that "On June 1, 2016, PharmaCorr will be assuming the operation of the pharmacy located at *Duane Waters Hospital, Jackson, Michigan*." (*Id.*; emphasis added.)  As noted above, Moore was incarcerated at Gus Harrison, *not* Duane Waters Hospital.  And Moore

Case 4:18-cv-13845-MFL-KGA   ECF No. 111, PageID.947   Filed 09/13/23   Page 12 of 14

has not provided evidence that Gus Harrison received its stock of medication from the pharmacy at Duane Waters Hospital.  Thus, even if a new vendor was supplying medications to the pharmacy at Duane Waters Hospital, Moore has not sufficiently linked that change to the medications provided to the inmates at Gus Harrison.

Simply put, the Reynolds-Barnes affidavit does not undermine Maly's version of events and does not support Moore's claim that she is liable.  Thus, Moore has failed to show that Magistrate Judge should have attached more weight to the affidavit.  This objection is therefore overruled.

**D**

Moore next asserts that the Magistrate Judge did not attach sufficient weight to his arguments that (1) "Maly tried to overwhelm [him] into taking the medication so that her long med-line could resume" and (2) he would have received a misconduct ticket had he refused to take the Geodon pill that Maly wrongly provided him. (Objections, ECF No. 107, PageID.917-918.)  But whether Moore would or would not have been disciplined had he refused to take the Geodon pill is not the dispositive issue in this case.  Instead, as explained above, the key issue here is: Did Maly act with deliberate indifference when she provided Moore the wrong medication.  For all of the reasons explained in the R&R and above, she did not. Therefore, even if Maly pressured Moore to take the pill she provided him, that fact

would not be sufficient to establish her liability.   Therefore, this objection is overruled.

## E

Moore next argues that the Magistrate Judge wrongly recommended dismissal of his Fourteenth Amendment bodily integrity claim. (*See id.*, PageID.918-920.) Moore's arguments with respect to this claim are virtually identical to his arguments on his Eighth Amendment deliberate indifference claim.  Thus, for all of the reasons explained above that his objections to the recommended dismissal of Moore's Eighth Amendment claim failed, Moore's arguments likewise fail to persuade the Court that his Fourteenth Amendment bodily integrity claim is viable.

## F

In Moore's final objection, he argues that the Magistrate Judge erred when she recommended dismissing the claims he brought against Moore in her official capacity. (*See id.*, PageID.920.)  Moore insists that because Maly was "acting under color of law" as an employee of the MDOC, his claims against her in her official capacity should be allowed to proceed. (*Id.*)  But as the Magistrate Judge correctly explained in the R&R, in order to proceed against Maly in her official capacity, Moore must identify some waiver of the state's sovereign immunity with respect to those claims.  He has failed to do so.  This objection is therefore overruled.

## IV

What happened here to Moore is unfortunate, and all parties are lucky that he did not suffer a more serious negative reaction after being given the wrong medication. No matter how busy the MDOC Med-Lines may be, employees like Maly must ensure that the right medication in the right dosage is given to the right inmate. However, for all of the reasons explained above, Moore has failed to persuade the Court that he has viable constitutional claims against Maly. Accordingly, **IT IS HEREBY ORDERED** as follows:

- Moore's objections (ECF No. 107) the R&R are **OVERRULED**;

- The recommended disposition of the R&R (ECF No. 103) is **ADOPTED**; and

- Maly's motion for summary judgment (ECF No. 92) is **GRANTED**.

    **IT IS SO ORDERED**.

                                    s/Matthew F. Leitman
                                    MATTHEW F. LEITMAN
                                    UNITED STATES DISTRICT JUDGE
Dated: September 13, 2023


I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 13, 2023, by electronic means and/or ordinary mail.

                                    s/Holly A. Ryan
                                    Case Manager
                                    (313) 234-5126

14